UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STACY RANDALL,

No. 13-12575

          Plaintiff,

District Judge Mark A. Goldsmith

v.

Magistrate Judge R. Steven Whalen

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.   Parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).  For the reasons set forth below,  I recommend that Defendant's Motion for Summary Judgment be GRANTED [Docket #9] and Plaintiff's Motion for Summary Judgment DENIED [Docket #8].

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB on May 18, 2010, alleging disability as of November 2, 2009 (Tr. 109).  Upon initial denial of the claim, Plaintiff requested an administrative hearing, held  on July 27, 2011 in Mount Pleasant, Michigan before Administrative Law

Judge ("ALJ") JoErin O'Leary (Tr. 35). Plaintiff, represented by attorney Mikel Lupisella, testified, (Tr.39-53), as did vocational expert ("VE") Michelle Ross (Tr. 53-56). On September 15, 2011, ALJ O'Leary found Plaintiff not disabled (Tr. 23-31).

On April 11, 2013, the Appeals Council declined to review the administrative decision (Tr. 1-3). Plaintiff filed suit in this Court on June 12, 2013.

## II.  BACKGROUND FACTS

Plaintiff, born May 18, 1980, was 31 at the time of administrative decision (Tr. 31, 109). She completed high school and worked previously as an assembler, customer service representative, restaurant hostess, housekeeper, and waitress (Tr. 132-133). In her application for benefits, she alleges disability as a result of a knee condition (Tr. 131).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced his client's testimony by noting that she had a Workers' Compensation claim pending* (Tr. 38).

Plaintiff offered the following testimony:

She had not worked since November, 2009 when she sustained an injury to her left leg while performing assembly line work (Tr. 40). X-rays taken directly after the accident were negative for fractures or other abnormalities (Tr. 41). She currently took both Vicodin (at night) and Gabapentin for continued leg pain but neither medication alleviated her pain (Tr. 42). She obtained relief by elevating the left leg "at least waist high" (Tr. 42). Clinical testing had been negative for nerve damage (Tr. 42-43). A four-week course of physical therapy made the condition worse (Tr. 43). She continued to experience left ankle swelling

with occasional "stabbing pain," accompanied by burning pain throughout the entire leg (Tr. 43-44). She avoided the regular use of crutches after being told by her pain specialist that using crutches would cause shoulder pain (Tr. 44). She coped with the leg problem by "stay[ing] off it" (Tr. 44).

Plaintiff's daily activities had changed dramatically since the accident (Tr. 44-45). She was unable to engage in sports with her children or perform yard work (Tr. 45). She performed household chores with difficulty (Tr. 45). The previous Halloween, she required a wheelchair while accompanying her children from house to house (Tr. 45). She was able to care for her personal needs and drive short distances (Tr. 45). She was able to prepare simple meals (Tr. 46). She was able to care for her four children, ages thirteen, eleven, seven, and five months with the help of her mother (Tr. 46).

Leg pain caused sleep disturbances, but did not create significant problems concentrating (Tr. 47). Aside from sleepiness caused by nighttime Vicodin use, she did not experience medication side effects (Tr. 48). She had been diagnosed with Reflex Sympathetic Dystrophy ("RSD") but as of yet, her pain specialist had only recommended the use of the above-mentioned medications and vitamin D (Tr. 48). She had discontinued the use of pain medication during her latest pregnancy (Tr. 51).

In response to questioning by her attorney, Plaintiff testified that she elevated her leg whenever she experienced pain (Tr. 51). She took daily naps lasting between 30 to 60 minutes (Tr. 52). She experienced pain in the arch of the foot when walking and burning

pain in the hip and thigh while sitting (Tr. 52). She was unable to sit comfortably for more than 20 minutes (Tr. 53).

### B. Medical Records

### 1. Treating Sources

September, 2009 treating records by family physician John J. Kemerer, D.O. state that Plaintiff was prescribed Gubapentin and Vicodin for neuropathic leg pain (Tr. 207). Plaintiff reported intermittent hot, cold, and burning sensations in her left leg (Tr. 209). Dr. Kemerer opined that Plaintiff had RSD (Tr. 208). The following month, Dr. Kemerer opined that Plaintiff was restricted to work performed in a sitting position (Tr. 211). An EMG of the lower left extremity was negative for mononeuropathy, plexopathy or radiculopathy (Tr. 224). Plaintiff reported that a Workers' Compensation fund would henceforth "take over" her medical treatment (Tr. 213). Dr. Kemerer opined that Plaintiff would be unable to work until May, 2010 (Tr. 214). The following month, Dr. Kemerer opined that Plaintiff should be restricted to work involving occasional walking and sitting, but no standing, driving, or lifting over 10 pounds (Tr. 218). Plaintiff noted that she had been unable to walk with her children on Halloween, but instead, used a wheelchair (Tr. 225).

The same month, November, 2009, Dr. Paul Meyer, M.D. noted that Plaintiff had been diagnosed with RSD (Tr. 201). April, 2010 treatment records by Dr. Meyer state that ankle swelling and pain caused an impaired gait but that Plaintiff obtained "significant relief" with cannabis use (Tr. 192). He noted that the examination was otherwise normal (Tr. 185). Plaintiff reported to Dr. Kemerer that the left leg pain now extended to the bottom of her foot

-4-

(Tr. 233, 248, 258).   In September, 2010, Plaintiff sought emergency treatment for a respiratory condition (Tr. 251).   An examination of the upper and lower extremities was unremarkable (Tr. 253).  In November, 2010, Dr. Kemerer noted that Plaintiff, then 25 weeks pregnant, experienced left leg pain because she had ceased use of all medication (Tr. 249, 259).   The same month, Dr. Kemerer gave Plaintiff a "poor" prognosis (Tr. 255).

In May, 2011,  Carol L. van der Harst, M.D. noted sensory loss of the left thigh and mild tenderness of the foot (Tr. 266).  She found the continued use of Vicodin, Baclofen and Gabapentin "appropriate" (Tr. 266).  Later the same month, Dr. van der Harst noted that the leg condition had improved (Tr. 264).  In June, 2011, Dr. van der Harst observed lower extremity tenderness but a normal gait (Tr. 263).   Plaintiff reported that her left foot condition "was aggravated by walking three hours at the [fair]" (Tr. 263).  Dr. van der Harst noted the presence of a Vitamin D deficiency (Tr. 263).  She noted that Plaintiff's "[m]edical compliance [was] in question" (Tr. 263).   In August, 2011, Dr. van der Harst completed a functional capacity assessment, finding that Plaintiff could lift 20 pounds on a frequent basis; stand or walk for two hours in an eight-hour workday and sit for six; and push or pull without limitation on the right extremity (Tr. 268).  Dr. van der Harst found that Plaintiff's ability to push with the left lower extremity was severely limited with an additional need for a sit/stand/walk option and the ability to elevate the left leg as needed for up to 10 minutes at a time (Tr. 268).

## 2.  A Non-Treating Source

In July, 2010, Siva Sankaran, M.D. performed a consultative physical examination on behalf of the SSA, noting Plaintiff's report that she was unable to walk more than 200 feet or climb more than one flight of stairs (Tr. 239).  Dr. Sankaran observed that Plaintiff experienced some difficulty squatting and arising due to leg pain but had an otherwise unremarkable physical examination with normal ambulation without the use of an aid and a full range of ankle motion (Tr. 240, 242-244).  Dr. Sankaran remarked that the diagnosis of RSD was made by a family physician (Tr. 241).

### C.  Vocational Testimony

VE Michelle Ross characterized Plaintiff's former work as an assembler as unskilled at the medium exertional level[1]  (Tr. 54).  The ALJ then described a hypothetical individual of Plaintiff's age, education, and work experience:

> [T]his individual would be limited to a limited range of light work.  They could lift and carry consistent with light work, but they could only stand and walk for two hours in an eight-hour workday consistent with sedentary work . . . . [T]his individual would be unable to climb ladders, ropes, or scaffolds. They would be unable to kneel and unable to crawl.  They could not work around unprotected heights or dangerous moving machinery. . . . [T]his

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools;  *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy*  work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

individual would have to avoid all exposure to extremes of cold – let's go with cold, heat, wetness or humidity.  With those restrictions, would such an individual be able to perform the past work that you identified? (Tr. 54-55).

The VE responded that the limitations would preclude Plaintiff's past relevant work but would allow the above-described individual to perform the unskilled, exertionally light work of a machine tender (7,800 positions in the State of Michigan); light assembler (14,000); and line attendant (4,800) (Tr. 56).  The VE testified that the inclusion of a sit/stand option, as needed, would not change the job numbers (Tr. 56).  The VE testified that if the same individual were required to elevate her left leg to waist height, all competitive work would be precluded (Tr. 56).

### D.  The ALJ's Decision

Citing the medical records, ALJ O'Leary found that Plaintiff experienced the severe impairment of RSD, but determined that the condition did not meet or equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 25).  The ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional restrictions:

> [C]laimant can lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours of an eight-hour work day.  She is unable to climb ladders, ropes, or scaffolds, and she should not work around unprotected height or dangerous machinery.  She should avoid all exposure to extremes of cold, heat, wetness, and humidity (Tr. 26).

Citing the VE's testimony, the ALJ determined that while Plaintiff was unable to perform her past relevant work, she could work as a machine tender, light assembler, or line attendant (Tr. 30).

The ALJ discounted Plaintiff's allegations of disability, citing Dr. Sandaran's findings of normal ambulation and range of motion and the absence of edema or clubbing (Tr. 27). The ALJ accorded greater weight to Dr. van der Harst's opinion than Dr. Kemerer's on the basis that the former had been referred by Dr. Kemerer for specialty treatment of the condition (Tr. 29). She also noted that Plaintiff's "relatively full range of activities" included childcare and driving stood at odds with the claims of disability (Tr. 29).

## III.    STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of

-8-

whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### IV.    FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

### V.  ANALYSIS

Plaintiff argues that the ALJ  improperly discounted  her alleged need to elevate her left leg on a regular basis.  *Plaintiff's Brief* , 6-12, *Docket #8* (citing Tr. 42); *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)*.*  She contends that the need for elevation is supported by the opinions of two treating physicians *Id.* at 11 (citing Tr. 219, 268).   She argues that

the omission of the need to elevate the left leg from the hypothetical question invalidates the VE's job testimony from which the ALJ made his Step Five finding. *Id.* at 6-12.   She also contends that the ALJ erred by failing to explain the rationale for the relative weight given the two treating source opinions.  *Id.* at 13-14.

The question of whether the ALJ erred by omitting Plaintiff's professed limitations from the hypothetical question  depends on the credibility determination.  *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include   discredited allegations of limitation in   hypothetical to VE). The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms.  "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2.  The second prong of  SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a consideration of the entire case record."*Id.* [2]

_____

[2]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other

-10-

Plaintiff does not contest the Step Two finding that she experienced the severe impairment of RSD or the ALJ's Step Three finding that the condition did not meet or medically equal a listed impairment.  Instead, relying on the second prong of SSR 96-7p, she appears to argue that the ALJ did not address her allegations of limitations or provide a satisfactory explanation for discounting them.

Plaintiff's argument is not well taken.  The ALJ provided a well reasoned discussion of her reasons for rejecting Plaintiff's claim that she needed to keep her left leg elevated at waist level.   The ALJ cited Dr. Sankaran's findings that Plaintiff was able to walk independently with a normal gait, did not require the use of a walking aid, and exhibited a normal range of ankle motion (Tr. 27).  The ALJ noted that while Dr. van der Harst opined on one occasion that Plaintiff needed to keep her leg elevated, none of the treatment records recommended elevating the leg (Tr. 27).   The ALJ observed that Plaintiff was able to drive a car, care for her personal needs, and perform child care activities (Tr. 28).  She noted that when Dr. van der Harst began treating Plaintiff in May, 2011, she did not recommend additional treatment other than Vitamin D (Tr. 28, 263, 266).  The ALJ found that Plaintiff's acknowledged search for work after the alleged onset of disability undermined the claim that she was unable to perform any work (Tr. 28).

––––––––––––––––––––

symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

-11-

Plaintiff is short on the particulars of how the ALJ erred in articulating the relative weight accorded to the two treating sources.  However, a review of the administrative opinion and transcript indicates that the ALJ's rationale was  well supported and explained.[3] She noted that Dr. Kemerer's November, 2010 opinion that Plaintiff was unable to perform even sedentary work was unsupported by objective studies or his own treating notes (Tr. 27, 29, 216).   The ALJ determined that Dr. van der Harst's opinion that Plaintiff could lift up to 20 pounds and walk for up to two hours a day was entitled to "considerable weight" based on the treating records and Plaintiff's daily activities (Tr. 29, 268).  Moreover, the ALJ explained her reasons for nonetheless rejecting Dr. Van der Harst's finding that Plaintiff would be required to elevate the left leg regularly, noting that the treating records did not support such a restriction (Tr. 27-29).  She cited Dr. van der Harst's 2011 treating records showing that Plaintiff was able to walk for three hours at a fair, walk with a normal gait, and experienced improvement with treatment (Tr. 27, 29, 263-264).

---

[3]

The failure to provide "good reasons" for rejecting a treating physician's opinion constitutes reversible error.  *Gayheart v. CSS*, 710 F.3d 365, 376 (6th Cir.2013); *Wilson v. CSS,* 378 F.3d 541, 544-546 (6th Cir.2004)(citing § 404.1527(c)(2)). "[T]he Commissioner imposes on its decision-makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir.2011). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.' " *Gayheart,* at 376 (citing SSR 96–2p, 1996 WL 374188, *5 (1996)).

-12-

Other evidence of record also supports the ALJ's determination.  An October, 2009 EMG of the lower left extremity was negative for neurological abnormalities (Tr. 224).  A September, 2010 emergency room examination of the lower extremities (made at the time Plaintiff sought treatment for a respiratory condition) was unremarkable (Tr. 253).  To the extent that the leg condition caused some level of limitation, Dr. van der Harst's records indicate that condition was exacerbated by Plaintiff's failure to comply with treatment (Tr. 263).  Because the ALJ's credibility determination and treating physician analysis were well supported, she did not err in rejecting the claims she excluded from the hypothetical question. *See  Stanley, supra,* 39 F.3d at 118-119.   As such, remand is not warranted.

In closing,  my  recommendation to uphold the Commissioner's decision on this application is not intended to trivialize the consequences of Plaintiff's workplace injury or ongoing limitations.   Nonetheless,  the ALJ's determination that she was not disabled is within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.  *Mullen v. Bowen*, *supra.*

## VI.   CONCLUSION

I recommend that Defendant's Motion for Summary Judgment [Docket #9] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #8] be DENIED.

Any objections to this  Report and Recommendation must be filed  within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 30, 2014

_____

### CERTIFICATE OF SERVICE

I hereby certify on June 30, 2014, that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on June 30, 2014: **None.**

s/Terri L. Hackman
Judicial Assistant to
Magistrate Judge R. Steven Whalen

-14-